# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER KAY STARLIPER, | : | Civil No. 1:12-CV-394 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION

## I. Statement of Facts and of the Case

This case presents legal issues regarding the treatment given by an ALJ to successive social security disability applications. These questions are presented on a record marked by uncertainty, clouded by confusion, and defined against the backdrop of a life which was allegedly becoming increasingly desperate.

The plaintiff, Jennifer Starliper, is a social security disability claimant who has faced a cascading array of physical, emotional and psychological challenges over the past several years. During this time Starliper has suffered from depression, attention deficit hyperactivity disorder, anxiety disorder, spondylolisthesis, or slippage of the

1

vertebra, and obesity. (Tr. 14.) Starliper has also experienced homelessness, an inability to maintain employment, and the loss of custody over several of her children.

Starliper has alleged that these challenges, which she claims have been progressive, have also been disabling, and has twice sought social security disability benefits. Starliper's first application for such benefits was denied by an ALJ on September 8, 2009, and that decision was affirmed by the Appeals Council on March 26, 2010. (Tr. 12.) However, as Starliper's life spiraled downward on November 24, 2009, she submitted a second claim of social security disability benefits, alleging an onset of disability beginning October 15, 2007. (Tr. 12.) Thus, on the face of this second application, there was a substantial logical, legal, topical and temporal overlap between Starliper's two, successive social security disability claims.

Following a hearing held on December 9, 2010, (Tr. 24-48.), an Administrative Law Judge (ALJ) denied Starliper's second disability application on December 16, 2010. (Tr. 9-24.) In reaching this result, the ALJ asserted at the outset of his opinion that he was giving the prior September 8, 2009, ALJ ruling denying benefits to Starliper a preclusive effect and would not consider evidence pre-dating September 9, 2009, except as necessary to establish the duration of any medically determined severe impairments. (Tr. 12.) Yet, while the ALJ announced that he was refusing to re-open Starliper's case and intended to give this prior ruling a preclusive effect with

2

respect to matters pre-dating September 8, 2009, that ALJ's opinion then applied this ruling in a murky and uneven fashion. Thus, while the ALJ had announced an intention to completely exclude this evidence pre-dating September 2009 from its consideration in evaluating Starliper's current disability claim, the ALJ then repeatedly cited medical matters pre-dating September 2009 as grounds for denying this second claim. For example, the ALJ referred to medical records from July 2009 when concluding that Starliper's spinal condition did not meet the impairment criteria listed in social security regulations. (Tr. 15.) The ALJ then appears to have considered matters pre-dating September 2009 when determining that Starliper's allegations regarding the intensity, persistence and disabling effect of her impairments was not fully credible, citing Starliper's failure on these prior occasions to seek treatment as evidence which cast doubt on her veracity. (Tr. 19.) Furthermore, the ALJ plainly considered the entirety of Starliper's medical history pre-dating September 2009 when assessing her residual functional capacity, noting that "*[e]ven prior to the period at issue*, the medical records document only minimal conservative treatment." (Tr. 20.)(emphasis added.)

Yet, while the ALJ frequently cited to this evidence which it had announced it would not consider to bolster its findings denying Starliper's claims, the ALJ's opinion made no reference to other countervailing evidence of events occurring

3

before September 2009 which would have supported her disability claim. This evidence included extensive proof relating to Starliper's declining mental health, evidence which included Global Assessment of Functioning (GAF) scores that were as low as 48-50. (Tr. 226, 232, 233, 243, 247 and 254.)

This was a potentially material omission since this information would have been material to a disability determination in a case like Starliper's, where the claimant is citing mental and emotional grounds for a disability claim. The GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness and is not supposed to include the consideration of impairment in functioning due to physical (or environmental) limitations. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000. ("DSM-IV-TR"). In this regard, GAF scores "in the range of 61–70 indicate 'some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning.' Diagnostic and Statistical Manual of Mental Disorders ('DSM IV') 34 (American Psychiatric Assoc.2000). GAF scores in the 51–60 range indicate] moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 F. App'x 898, 900 (3d Cir.2002). DaVinci v. Astrue, 1:11-CV-1470, 2012 WL 6137324 (M.D.

Pa. Sept. 21, 2012) report and recommendation adopted, Davinci v. Astrue, 1:11-CV-1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012). "A GAF score of 41–50 indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34. A score of 50 is on the borderline between serious and moderate symptoms." Colon v. Barnhart, 424 F. Supp. 2d 805, 809 (E.D. Pa. 2006). Thus, this evidence would have suggested the presence of serious emotional symptoms, and a level of psychological impairment on the borderline between serious and moderate. Colon v. Barnhart, supra.

Therefore, the ALJ's opinion in this case appears on its face to reflect three different, and discordant, themes: an express refusal to consider matters pre-dating the denial of Starliper's prior claim on September 8, 2009; combined with actual reliance on these precluded matters to deny Starliper's second claim; coupled with a failure to acknowledge countervailing evidence pre-dating September 2009 which would have supported those claims. Given this uneven treatment of these prior events, we cannot determine whether the ALJ effectively re-opened Starliper's case, and whether the treatment of this case, if it was in effect re-opened, satisfied the legal standards applicable to such claims. Therefore, it is recommended that this matter be remanded for further consideration by the ALJ.

## II. Discussion

In its current posture this case presents a threshold, and unresolved, question concerning the manner in which these successive disability claims were treated by the ALJ, since the ALJ announced that he would not re-open Starliper's Sepetember 2009 disability claim, but then selectively considered evidence arising out of that prior claim in denying her successive claim, while not addressing pre-existing evidence which supported that second claim.

While the principles which govern such cases can be simply stated, this case aptly illustrates the difficulties that can arise when applying these principles to successive disability claims. At the outset, it is clear that: "when a claimant files successive applications, res judicata may be invoked by the agency to avoid entertaining each subsequent request based on the same issues. See Purter v. Heckler, 771 F.2d 682, 691 (3d Cir.1985). Res judicata applies if the agency has 'made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action.' 20 C.F.R. § 404.957. However, the ALJ is not required to apply res judicata, and there are circumstances when a final determination may be reopened either upon the claimant's request or the agency's own initiative. See 20 C.F.R. § 404.988." Kaszer v. Massanari, 40 F. App'x

686, 690 (3d Cir. 2002). Further, "a decision by the agency not to reopen a claim is not judicially reviewable. See Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); Coup, 834 F.2d at 317. But 'we will examine the record to determine whether or not a reopening has occurred.' Coup, 834 F.2d at 317. We will find a reopening, and thus a waiver of res judicata, 'where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits.' Kane v. Heckler, 776 F.2d 1130 (3d Cir.1985). We may find after looking at the administrative record that the reopening has been either explicit or *de facto*. Coup, 834 F.2d at 317." Kaszer v. Massanari, 40 F. App'x 686, 690 (3d Cir. 2002). Finally, when the agency's administrative record reflects a fatal ambiguity regarding the treatment of a prior disability claim and the re-opening of that claim, it has been held that a remand to the ALJ for further proceedings is appropriate. Dowd v. Comm'r of Soc. Sec., CIVA 08-1272, 2009 WL 2246153 (W.D. Pa. July 26, 2009). In particular, when an ALJ expressly denies reopening successive claims, but then relies upon evidence adduced in a prior claim to deny a successive claim, a remand is appropriate to permit the agency to clarify its treatment of these claims. Id.

This case presents us with one of those unusual circumstances where remand is proper to address confusion regarding the legal treatment of Starliper's successive

claims. Indeed, in our view remand is essential in this case since the ALJ's opinion can be construed as simultaneously announcing that Starliper's September 2009 disability claim would not be re-opened, while selectively considering evidence arising out of that prior claim in denying her successive claim, and not addressing pre-existing evidence which supported that claim.

Because we find that the threshold confusion regarding the treatment afforded to the evidence developed in these two successive claims is profound, we conclude that remand is necessary to clarify this confused record. Yet, while case law plainly calls for a remand and further proceedings by the ALJ in this case to assess the interplay between these successive claims, and provide greater clarity regarding whether, and to what extent, these successive claims should be reopened, nothing in this report and recommendation should be construed as suggesting what the outcome of that final and full analysis should be. Nor do we express a view on the ultimate merits of these successive claims. Instead, we simply recommend that the case be remanded in order for the ALJ to re-assess this claim further within analytical framework prescribed for evaluation of successive claims.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint and claim be REMANDED for further consideration in accordance with this report and recommendation.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th day of August 2013.

              *S/Martin C. Carlson*
              Martin C. Carlson
              United States Magistrate Judge